Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 219 | **DATE** | 8/6/2003 |
| **CASE TITLE** | Ronny Gamboa vs. The City of Chicago, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Defendants' motion to dismiss is granted. Plaintiff's section 1983 claims and state law claims for malicious prosecution and international infliction of emotional distress against defendant officers and the City are dismissed with prejudice. Plaintiff's RICO claim against defendant officers is dismissed without prejudice. Plaintiff is hereby granted leave to amend his complaint within thirty days of the date hereof. If plaintiff fails to amend his complaint within the thirty-day period, the dismissal of his RICO claim will become with prejudice. Plaintiff's state law claims against individual defendants LaSalle and Ortiz are dismissed without prejudice.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 7 2003 | |
| | Notified counsel by telephone. | | date docketed | 13 |
| ✓ | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| ✓ | Copy to judge/magistrate judge. | 03 AUG -6 PM 4:18 | date mailed notice | |
| TBK | courtroom deputy's initials | FILED FOR DOCKETING 1-03 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
AUG 7 2003

| | | |
|---|---|---|
| RONNY GAMBOA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 03 C 219 |
| THE CITY OF CHICAGO, et al., | ) ) | Paul E. Plunkett, Senior Judge |
| Defendants. | ) ) | |

## *MEMORANDUM OPINION AND ORDER*

Plaintiff has sued defendants[1] for their alleged violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, 42 U.S.C. § 1983 ("section 1983"), and state law. This matter is before the Court on defendants individual officers and the City of Chicago's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the claims asserted against them. For the reasons set forth below, the motion is granted.

### *Facts*

Plaintiff has provided the following facts. Sindulfo Miranda was abducted on or about July 17, 1997 and later found murdered. (Compl. ¶ 9.) The Chicago Police Department (the "CPD") began an investigation of the murder. (Compl. ¶ 10.) Among the CPD officers and detectives assigned to the case were defendants Bautista, Lopez, Rodriguez and Velez (the "defendant officers"). (*Id.*) Defendant officers obtained phone records from Miranda's cell phone which led

---

[1] Plaintiff has sued the City of Chicago, Chicago Police Officers Alfonso Bautista, Paul Lopez, Robert Rodriguez and Carlos Velez, and two private individuals, Miguel LaSalle and Luis Oritz.

13

them to an individual who told them that he planned to meet Miranda on the night of Miranda's abduction at a tavern owned by plaintiff, Ronny's Place. (Compl. ¶ 11.)

The cell phone records also showed that four telephone calls were made from Miranda's cell phone to defendant LaSalle on the night of Miranda's abduction, and defendant officers focused their investigation on LaSalle. (*Id.* ¶¶ 12, 13.) Because of the high profile nature of the murder, for which no one had been arrested or charged, defendant officers threatened and intimidated LaSalle into making a false statement that implicated plaintiff in the solicitation of murder for hire and murder of Miranda. (*Id.* ¶ 13.) LaSalle knew that his oral and written statements were false. (*Id.* ¶ 20.) In addition, defendant officers threatened and harassed one Jose Chapa into giving a false statement that he (Chapa) was with Miranda at Ronny's Place on the night of Miranda's abduction. (*Id.* ¶ 14.)

Defendant officers also gave false facts about Miranda's abduction and murder to Omar Aguirre and Duarte Santos. Aguirre and Santos signed statements implicating plaintiff in Miranda's murder, even though Aguirre could not read or write English and Santos was not in Ronny's Place on the night of the abduction and had never heard plaintiff solicit anyone to abduct or murder Miranda. (*Id.* ¶¶ 15, 18.)

Defendant officers failed to investigate information given to them by witnesses LaSalle, Chapa, Santos, Aguirre and Ortiz, including timely obtaining telephone records and verifying information about Miranda's presence in the tavern on the night of his abduction. (*Id.* ¶ 24.) They prepared multiple reports that included false information and statements. (*Id.* ¶ 23.) These reports were then turned over to the Cook County State's Attorney, who used them to indict plaintiff for solicitation of murder for hire and murder. (*Id.* ¶ 25.) Plaintiff was arrested and charged with these crimes on November 7, 1997. (*Id.* ¶ 22.)

At some point before the trial, defendant officers lost contact with LaSalle and needed someone to place Miranda at Ronny's Place on the night of his abduction. (*Id.* ¶ 17.) In the days prior to plaintiff's 2000 trial, defendant officers threatened and intimidated defendant Ortiz into changing the statements he previously gave to the police; Ortiz now said that he was at Ronny's Place at the time of Miranda's abduction, he heard plaintiff's solicitation of murder and he helped in the abduction and beating of Miranda. (*Id.*) It was defendant officers who provided these false facts and information to Ortiz. (*Id.* ¶ 16.) Ortiz knew his statements were false. (*Id.* ¶ 21.)

At plaintiff's trial, Ortiz falsely testified that plaintiff solicited him, Aguirre, Santos and one Robert Gayol to abduct and murder Miranda. (*Id.* ¶ 18.) LaSalle falsely testified that he was at Ronny's Place when he heard plaintiff solicit Ortiz, Aguirre, Santos and Gayol to murder Miranda and falsely testified that Miranda was at the tavern on July 17, 1997. (*Id.* ¶ 19.) Both Ortiz and LaSalle knew that their trial testimony was false. (*Id.* ¶¶ 20, 21.) Plaintiff was acquitted in August 2000.

Plaintiff was incarcerated for several days before he obtained a loan that enabled him to post a $1 million bond. (*Id.* ¶ 26.) He was forced to hire an attorney and defend himself to the conclusion of a jury trial. (*Id.* ¶ 27.) Plaintiff has had to pay thousands of dollars of interest on the bond loan and on monies borrowed to pay legal fees. (*Id.* ¶ 28.) He has suffered a loss of reputation in the community and a substantial loss of business at his tavern. (*Id.* ¶ 29.) In addition, plaintiff suffered extreme mental anguish during the three years he awaited trial. (*Id.* ¶ 30.)

Defendant officers knew that various statements implicating plaintiff were false. For a five-year period they conspired to cover up their intimidation of witnesses, the false testimony, the perjury, the obstruction of justice, and their faulty investigation. (*Id.* ¶ 31.)

## *The Legal Standard*

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## *Discussion*

### I. RICO

### A. RICO Allegation

The RICO enterprise consists of the CPD, "in and through which the Defendant Officers used their official positions to illegally attempt to obstruct justice, intimidate witnesses, hide exculpatory evidence and [sic] defendants to commit perjury and to cover up false arrests and to falsely prosecute [p]laintiff for murder." (Compl. ¶ 32.) Plaintiff alleges that the defendant officers "participated in the conduct of the CPD through a pattern of racketeering activity, and conspired amongst themselves and others including Miguel LaSalle, Luis Ortiz and others unnamed to do the same." (*Id.* ¶ 34.) The complaint alleges that the defendant officers violated several laws in carrying out their scheme: 18 U.S.C. § 1503 (influencing a grand jury; obstruction of justice); 18 U.S.C. § 1510 (obstruction of a criminal investigation); 18 U.S.C. § 1511 (obstruction of state or local law enforcement); 18 U.S.C. § 1512 (tampering with a witness); and Illinois criminal laws. (*Id.* ¶ 35.)

## B. Substantive RICO Violation

Among other things, RICO prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To state a claim for a violation of §1962(c), plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Slaney v. International Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). The defendant officers contend that plaintiff does not have standing to bring a RICO claim. In addition, they contend that plaintiff has not adequately alleged conduct of a RICO enterprise[2], a RICO pattern or a sufficient nexus with interstate commerce. We begin with the standing issue.

### 1. Standing

Section 1964(c) authorizes a private suit by anyone "injured in his business or property by reason of a violation of § 1962." 18 U.S.C. § 1964(c). Defendant officers assert that plaintiff's injuries as described in his complaint – legal fees incurred in defending himself against the criminal charges, interest and fees on the bond loan and loss of business reputation – are not injuries in plaintiff's "business or property." We disagree.

A plaintiff has standing if, and can recover only to the extent that, "he has been injured in his business or property by the conduct constituting [a violation of § 1962]." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (holding that no distinct "racketeering injury" is necessary; injury

---

[2] Defendant officers characterize this claim as a failure to properly allege a RICO enterprise, but they are actually arguing that they do not have the appropriate level of authority or influence over the enterprise to be liable under RICO.

by predicate acts themselves are sufficient). A plaintiff cannot recover for personal injuries even if they result in pecuniary loss. *Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992).

While it may not be that all of plaintiff's alleged financial losses traceable to the alleged RICO violation are compensable "business or property" injuries, certain of his injuries, such as his legal fees and bond loan fees, could be. The *Doe* case does not stand for the proposition that attorney's fees are not recoverable in a RICO case, as defendant officers assert; rather, in that case the court found that certain of plaintiff's costs (which included attorney's fees) were merely derivatives of her emotional distress and not compensable. *Doe*, 958 F.2d at 770. The circumstances in this case are quite different. Here, the purpose of defendant officers' predicate acts was to implicate plaintiff in Miranda's murder. If defendant officers were successful, and they were according to the complaint, a natural and expected result of their conduct would be plaintiff's hiring of a defense lawyer and incurring other costs normally associated with being charged with a crime. *See Rylewicz v. Beaton Servs., Ltd.*, 888 F.2d 1175, 1179 (7th Cir. 1989) (focusing on purpose and objectives of predicate acts to determine whether injury was harm caused by predicate acts). *See also Holmes v. Securities Protector Investor Corp.*, 503 U.S. 258, 268-70 (1992) (discussing proximate cause requirement of RICO injuries).

We find that plaintiff has alleged injury to his business or property by reason of a violation of § 1962 and that he has standing to bring his claim. *See Sedima, S.P.R.L.*, 473 U.S. at 495 (if racketeering activities injure a plaintiff in his business or property, then the plaintiff has a claim under § 1964(c)).

## 2. Conduct

The RICO statute makes it unlawful for any person associated with an enterprise to "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). A person participates in the conduct of an enterprise's affairs only if he plays "some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). One must "participate[] in the operation or management of the enterprise itself" or play "some part in directing the enterprise's affairs" to be liable under RICO. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998) (quoting *Reves*, 507 U.S. at 170, 179, 183 (1993)). A person need not be the head of the enterprise to participate in its operation, however. A RICO enterprise "may be operated by lower-rung participants . . . who are under the direction of upper management." *MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 977 (7th Cir. 1995) (internal quotation marks and citations omitted). A person does not violate § 1962(c), though, if he merely participates in the activities of an enterprise. *Goren*, 156 F.3d at 727.

Defendants contend that plaintiff's complaint fails to adequately allege that they are operators or managers of the enterprise, the CPD. The CPD is, defendants say, "a large organization, with over 14,000 employees" whose conduct is controlled "by individuals far up the chain of command, far removed from the four [defendant] detectives." (Mem. Law Mot. to Dismiss at 8.) Defendant officers are "merely detectives, with no part in directing the affairs of CPD." (*Id.*)

We do not find defendant officers' arguments convincing. The complaint states that defendant officers provided false documents and the false testimony of others to the Cook County State's Attorney, who then used this information to prosecute plaintiff. It is reasonable to assume that defendant officers' "false information" was viewed by the CPD and the State's Attorney as CPD

information and that defendant officers could speak for the CPD and thus were in a position to manage or direct the CPD's affairs. We find that the complaint adequately satisfies the "conduct" element of a § 1962 (c) claim. *See United States v. Boylan*, 898 F.2d 230 (1st Cir. 1990) (police detectives convicted of §§ 1962(c) and (d) where the enterprise was the Boston Police Department).

### 3. Interstate Commerce Nexus

To be liable under RICO, the RICO enterprise must be engaged in interstate commerce or its activities must affect interstate commerce. *See United States v. Muskovsky*, 863 F.2d 1319, 1325 (7th Cir. 1988). Defendant officers claim that the complaint fails to adequately allege that the CPD satisfies the interstate commerce nexus requirement. We disagree.

"The required nexus between the activities of the enterprise and interstate commerce need not be great; even a minimal effect on interstate commerce satisfies this jurisdictional element." *Id.* (quoting *United States v. Bagnariol*, 665 F.2d 877, 892 (9th Cir.1981)). The complaint alleges the existence of an enterprise that has an effect on interstate commerce and through which defendant officers engaged in a pattern of racketeering activity. (Compl. ¶¶ 32-34.) At this stage, we cannot say that plaintiff can prove no set of facts to show the CPD affected interstate commerce. *Bunker Ramo Corp. v. United Bus. Forms, Inc.*, 713 F.2d 1272, 1289 (7th Cir. 1983) (finding an allegation which states that "an enterprise . . . which engaged in a pattern of racketeering that affected interstate commerce by committing the following . . . ." and lists activities that are wholly intrastate sufficient to withstand motion to dismiss). *See also United States v. Grzywacz*, 603 F.2d 682 (7th Cir. 1979) (finding that a police department can be an enterprise under § 1964(1)). The complaint adequately alleges a nexus between the enterprise and interstate commerce.

### 4. RICO Pattern

We come now to one of the more complicated elements of a RICO claim – the pattern requirement. A civil RICO plaintiff must allege a "pattern of racketeering activity", which is, at a minimum, two predicate acts. 18 U.S.C. §§ 1961(5), 1962(c). But the Supreme Court also requires that a plaintiff satisfy the so-called "continuity plus relationship" test, which requires a showing that the predicate acts are related to each other and pose a threat of continued criminal activity. *H. J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992).

The relationship element is met if the predicate acts have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H. J. Inc.*, 492 U.S. at 240 (looking to language in the Dangerous Special Offender Sentencing Act, 18 U.S.C. § 3575, *et seq.* (partially repealed), an act which formed part of the Organized Crime Control Act of 1970 with RICO) (internal quotations omitted). The continuity element is met if there is "a series of related predicates extending over a substantial period of time," called closed-ended continuity, or if the predicates "by [their] nature project[] into the future with a threat of repetition," as when they "are part of an ongoing entity's regular way of doing business," called open-ended continuity. *Id.* at 241-42. Defendant officers do not contend that the various predicate acts are unrelated. Instead, they raise the issue of whether the allegations satisfy the continuity prong of the pattern element.

### Closed-ended Continuity

A "closed-ended" period of continuity "involves a course of criminal conduct which has come to a close." *Midwest Grinding Co., Inc.*, 976 F.2d at 1022. A plaintiff may satisfy the continuity element in this case by showing "a series of related predicates extending over a substantial period of time" which threatens continued criminal activity. *H. J. Inc.*, 492 U.S. at 242. In *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. 1986), the Seventh Circuit articulated a multifactor continuity test used in "closed-ended" cases. *See Vicom, Inc. v. Harbridge Merchant Svcs., Inc.*, 20 F.3d 771, 780-82 (7th Cir. 1994) (using the *Morgan* factors to analyze closed-ended continuity). Factors relevant to a determination of whether a pattern of racketeering activity exists are: "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Morgan*, 804 F.2d at 975.

We find that plaintiff has not shown a threat of continued criminal activity under the "closed-ended" analysis. Although plaintiff has alleged a number of predicate acts committed over the course of three years, in essence they are elements of one act: the conviction of plaintiff for Miranda's murder. *See Morgan*, 804 F.2d at 976-77 (discussing *Lipin Enters. Inc. v. Lee*, 803 F.2d 322 (7th Cir. 1986), and noting that the multiple predicate acts in *Lipin* resulted from the complexity of the fraudulent transaction and did not make the predicate acts separate transactions "distinct in time and place"). Moreover, the other *Morgan* factors militate against a finding of continuity. *See id.* at 975-76 (determination of a pattern of racketeering activity depends on facts and circumstances of the particular case; no one factor is determinative). The predicate acts were directed at only one victim (plaintiff) and related to only one scheme (the implication of plaintiff in Miranda's murder), and the

alleged injuries (interest on bond loan and legal fees) result from the single scheme. "The acts alleged, while multiple, represented the entire scheme, which necessarily would end after its single accomplishment." *Marks v. Pannell Kerr Forster*, 811 F.2d 1108, 1112 (7th Cir. 1987). Plaintiff has alleged a one-time frame-up by defendant officers, which is not what RICO was designed to address. *See Lipin Enters. Inc.*, 803 F.2d at 324 ("RICO is not aimed at the isolated offender") (internal citations omitted).

### Open-ended Continuity

Plaintiff can still satisfy the pattern requirement, however, if his allegations show (1) a "specific threat of repetition" of past conduct; (2) the predicate acts constitute a course of business; or (3) a "long-term association that exists for criminal purposes." *Midwest Grinding Co., Inc.*, 976 F.2d at 1023 (discussing *H. J. Inc.*, 492 U.S. at 242-43) (internal quotations omitted). The complaint fails on all three grounds.

First, plaintiff here alleges one purpose of the defendant officers' scheme – the conviction of plaintiff for Miranda's murder. The scheme had a natural ending point and there is no inherent threat of continued misconduct. *See Vicom*, 20 F.3d at 782 (stating that "schemes which have a clear and terminable goal have a natural ending point" and that "such schemes therefore cannot support a finding of any specific threat to continuity that would constitute open-ended continuity"). Second, plaintiff has not attempted to allege that the predicate acts are part defendant officers' regular way of doing business. *Id.* at 783 (predicate acts themselves must be part of regular way of conducting business). Last, the third way to show open-ended continuity – long-term association existing for criminal purpose – is not applicable here.

-11-

In short, plaintiff has failed to adequately allege a pattern of racketeering activity sufficient to maintain a substantive RICO claim against the defendant officers. *See Lipin*, 803 F.2d at 324 ("the pattern requirement was intended to limit RICO to those cases in which racketeering acts are committed in a manner characterizing the defendant as a person who regularly commits such crimes").

### C. RICO Conspiracy

Plaintiff has also not stated a claim under § 1962(d), which prohibits conspiracy to violate RICO. To allege a conspiracy to violate § 1962(c), plaintiff has to plead that each of the defendant officers agreed to conduct the affairs of an enterprise, each agreed to the commission of at least two predicate acts, and each knew that the predicate acts were part of a pattern of racketeering activity. *Schiffels v. Kemper Fin. Servs., Inc.*, 978 F.2d 344, 352 (7th Cir.1992). Because plaintiff has failed to adequately allege the substantive RICO claim, his conspiracy claim necessarily fails. *See Howard v. America Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) (plaintiff cannot claim RICO conspiracy if he does not adequately plead substantive violation of RICO); *Pyramid Securities, Ltd. v. International Bank*, 726 F. Supp. 1377, 1381 (D.D.C. 1989), *aff'd*, 924 F.2d 1114 (D.C. Cir. 1991) ("A pattern is an essential element of both the § 1962(c) claim and the § 1962(d) RICO conspiracy claim, which is predicated solely upon the alleged § 1962(c) violation.").

## II. Section 1983 Claims

Plaintiff has asserted 42 U.S.C. § 1983 claims against defendant officers for violations of his constitutional rights stemming from his arrest and prosecution, and against the City of Chicago (the "City") because of its customs, policies and practices.

Defendant officers and the City assert that plaintiff's section 1983 claims, which are subject to a two-year statute of limitations, are time-barred and should be dismissed.[3] *See Ashafa v. City of Chicago*, 146 F.3d 459, 461-62 (7th Cir. 1998) (correct statute of limitations for section 1983 actions filed in Illinois is two years). Plaintiff admits that section 1983 claims are normally governed by a two-year statute of limitations, but argues that the application of either the federal doctrine of equitable estoppel or Illinois' fraudulent concealment statute will extend the time in which he is required to file these claims.[4] We disagree.

First, plaintiff cannot find shelter under equitable estoppel. "Equitable estoppel prevents a party from asserting the expiration of the statute of limitations as a defense when that party's improper conduct has induced the other into failing to file within the statutory period." *Ashafa*, 146 F.3d at 462. The doctrine is available under only limited circumstances, such as when a defendant

---

[3] Defendants claim that using either the date of plaintiff's arrest, November 7, 1997, or the date of his acquittal, August 14, 2000, as the date of accrual, plaintiff's section 1983 claims are untimely as he filed his complaint in January 2003.

[4] Plaintiff makes a timid argument that the accrual date should be in December 2002, when the federal government indicted other individuals for Miranda's murder, as plaintiff was unaware of any wrongdoing on the part of defendants before that time. (Pl.'s Mem. Response Mot. to Dismiss at 5, 10.) We are not convinced. At the latest, the evidence presented at plaintiff's trial should have alerted him that something was amiss. *See Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993) (a section 1983 claim is treated as a personal injury claim, "with the claim accruing when the injury is inflicted.")(quoting *Diaz v. Shallbetter*, 984, F.2d 850, 855 (7th Cir. 1993)). Moreover, plaintiff does not expand on this position, arguing more thoroughly instead for the application of either the equitable estoppel doctrine or Illinois' fraudulent concealment statute.

promises not to plead the statute of limitations during settlement talks or when a defendant conceals evidence that the plaintiff needed in order to determine the existence of a claim. *See Smith v. City of Chicago Heights*, 951 F.2d 834, 840-41 (7th Cir. 1992); *Gonzalez v. City of Chicago*, 1998 WL 89123, at *5 (N.D. Ill. Feb. 13, 1998). "[E]quitable estoppel focuses on whether defendant acted *affirmatively* to stop or delay the plaintiff from bringing suit within the limitation period." *Smith*, 951 F.2d at 841.

Plaintiff has not said that defendant officers or the City took any active steps to prevent him from filing his section 1983 claims or that he relied on their affirmative conduct or representations in not filing his claims sooner. Plaintiff details the ways in which defendant officers obtained false evidence against him, but those actions alone are not enough. *See Ashafa*, 146 F.3d at 463 (finding that plaintiff must show not only misconduct by defendant, but actual and reasonable reliance on the misconduct). For equitable estoppel to apply, defendants must have engaged in conduct "above and beyond the wrongdoing upon which . . . plaintiff's claim is founded." *Smith*, 951 F.2d at 841 (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)). Plaintiff says that "[n]ever did the Defendant Officers come forward and acknowledge they prepared false statements to purportedly solve the crime." (Resp. Mot. to Dismiss at 12.) Failure on the part of defendant officers to admit to falsifying evidence is not the "active step" necessary to invoke equitable estoppel. To find otherwise would "merge[] the substantive wrong with the tolling doctrine" and essentially vitiate the statute of limitations. *Smith*, 951 F.2d at 841 (quoting *Cada*, 920 F.2d at 451).

Similarly, we find that the Illinois fraudulent concealment statute[5] does not apply. "[C]oncealment . . . sufficient to toll the statute of limitations requires affirmative acts or representations designed to prevent discovery of the cause of action or to lull or induce a claimant into delaying the filing of his claim." *Dancor Int'l, Ltd. v. Friedman, Goldberg & Mintz*, 681 N.E.2d 617, 623 (Ill. App. Ct. 1997). Plaintiff's cause of action was not concealed from him. Plaintiff, innocent of any involvement in the Miranda murder, would have known that the evidence used against him in the murder trial was false. *See Kelly v. City of Chicago*, 4 F.3d 509, 513 (7th Cir. 1993). Moreover, plaintiff has not offered any affirmative acts or words by defendant officers or the City which deceived plaintiff or otherwise prevented him from bringing suit within two years. *See Worthington v. Wilson*, 8 F.3d 1253, 1257 (7th Cir. 1993) (finding silence on part of defendant police officers did not amount to fraudulent concealment); *Dancor Int'l, Ltd.*, 681 N.E.2d at 623 (fraudulent concealment allegation must be supported by "facts of affirmative acts or misrepresentations by the defendant which were designed to prevent and in fact did prevent the discovery of the claim") (internal citations omitted).

Plaintiff has brought his section 1983 claims more than two years from the date the claims accrued, and plaintiff cannot rely on the doctrine of equitable estoppel or the Illinois fraudulent concealment statute to avoid the expiration of the statutory period. The section 1983 claims against defendant officers and the City are dismissed with prejudice.

---

[5] The statute provides:
> If a person liable to an action fraudulently conceals the cause of such action, . . . the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards. 735 Ill. Comp. Stat. Ann. 5/13-215 (West 1992).

## III. State Law Claims

Plaintiff's state law claims for malicious prosecution and intentional infliction of emotional distress are brought against defendant officers, the City and individual defendants LaSalle and Ortiz. Defendant officers and the City assert that the Local Governmental and Governmental Employees Tort Immunity Act (the "Tort Immunity Act"), found at 745 ILCS 10/8-101,[6] assigns a one-year statute of limitations to the claims against them, and that the claims are time-barred. We assume plaintiff agrees as he did not address this issue in his response memorandum. In any event, defendant officers and the City are correct.

Termination of the criminal proceedings in a plaintiff's favor is one of the elements of a state law claim for malicious prosecution. *See Joiner v. Benton Cmty. Bank*, 411 N.E.2d 229 (Ill. 1980). Thus, the statute of limitations began to run in this case on August 14, 2000. Plaintiff had to file his claims against these defendants on or before August 14, 2001, which he did not do. The statute of limitations has run and his claim for malicious prosecution is dismissed with prejudice.

Plaintiff's claim for intentional infliction of emotional distress suffers the same fate. Using the same trigger date - August 14, 2000 – for the running of the statute of limitations, *see Treece v. Village of Naperville*, 903 F.Supp. 1251, 1259 (N.D. Ill. 1995), and an identical application of the Tort Immunity Act, we find that the claim for intentional infliction of emotional distress is time-barred. Consequently, this claim against defendant officers and the City is dismissed with prejudice.

---

[6] The statute provides:
> No civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued.... 745 Ill. Comp. Stat. Ann. 10/8-101 (West 2002).

There is one additional matter which has come to the Court's attention in the course of addressing this motion. Plaintiff asserts claims for malicious prosecution and intentional infliction of emotional distress against individual defendants LaSalle and Ortiz. The Court's electronic docket, however, does not show that these defendants have been served. Pursuant to Federal Rule of Civil Procedure 4(m), we dismiss without prejudice plaintiff's claims as to these two individuals.

*Conclusion*

For the reasons stated above, defendants' motion to dismiss is granted. Plaintiff's section 1983 claims and state law claims for malicious prosecution and intentional infliction of emotional distress against defendant officers and the City are dismissed with prejudice. Plaintiff's RICO claim against defendant officers is dismissed without prejudice. Plaintiff is hereby granted leave to amend his complaint within thirty days of the date hereof. If plaintiff fails to amend his complaint within the thirty-day period, the dismissal of his RICO claim will become with prejudice. Plaintiff's state law claims against individual defendants LaSalle and Ortiz are dismissed without prejudice.

**ENTER:**

**UNITED STATES DISTRICT JUDGE**

DATED: 8-6-03