# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 219 | **DATE** | 6/29/2004 |
| **CASE TITLE** | Ronny Gamboa vs. City of Chicago, et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Defendants Carlos Valez, R. Rodriguez, Paul Lopez and Alfonso Bautista's motion to dismiss plaintiff's first amended complaint (26-1) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUN 3 0 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | 35 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | 6/29/2004 date mailed notice | |
| CW | courtroom deputy's initials | 2004 JUN 29 PM 4:35 | cw mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

Minute Order Form (06/97)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

RONNY GAMBOA, )
)
    Plaintiff, )
)
v. ) No. 03 C 219
) Paul E. Plunkett, Senior Judge
THE CITY OF CHICAGO, et al., )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendants Carlos Valez, R. Rodriguez, Paul Lopez and Alfonso Bautista's Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss plaintiff's amended complaint. For the reasons set forth below, the motion is denied.

### Facts

Plaintiff, Ronny Gamboa, has alleged Racketeering Influenced and Corrupt Organizations Act ("RICO") violations against defendants. In support, he provides the following facts. Plaintiff is a Chicago resident. (Compl. ¶ 3.)[1] Defendants Valez, Rodriguez, Lopez and Bautista (collectively, "defendants" or "Defendant Officers") are police officers and detectives employed by the City of Chicago. (Id. ¶ 4.) On or about July 17, 1997, Sindulfo Miranda was murdered. (Id. ¶ 7.) The Chicago Police Department ("CPD") began an investigation of Miranda's murder. (Id. ¶ 8.) Among the CPD detectives assigned to investigate the case were defendants Valez, Rodriguez, Lopez and

---

[1] All references to "Compl." refer to plaintiff's amended complaint.

Bautista. (*Id.*) The investigation continued until on or about November 7, 1997, when plaintiff was arrested and charged with murder and solicitation of murder for hire. (*Id.*)

Plaintiff was held in custody for several days until he obtained a loan against some real estate, which he used to post bond. (*Id.* ¶ 9.) For almost three years, plaintiff faced the possibility of the death penalty for the murder charge. (*Id.* ¶ 10.) Plaintiff stood trial for the murder of Miranda in August 2000 and was acquitted.

Defendants Valez and Rodriguez intimidated a number of witnesses in connection with plaintiff's arrest and subsequent trial on the murder charges. They intimidated Miguel LaSalle to falsely state orally and in writing that Miranda was beaten and kidnaped at a tavern owned by plaintiff and at the direction and control of plaintiff. (*Id.* ¶ 11.) Defendant Officers knew LaSalle's oral and handwritten statements were false and they tendered them to the Cook County State's Attorney's Office ("CCSAO"). (*Id.* ¶ 19.) LaSalle's statements, which implicated plaintiff in Miranda's murder, were used at Omar Aguirre's trial.[2] (*Id.*)

Valez and Rodriguez also intimidated Luis Ortiz into falsely implicating plaintiff in Miranda's murder. (*Id.* ¶ 13.) Valez, with others from either the CPD or the CCSAO, intimidated or offered inducements to Ortiz to falsely testify at plaintiff's August 2000 trial. (*Id.* ¶ 15.) The false testimony included statements that he (Ortiz) was in plaintiff's tavern when the solicitation for murder occurred and while Miranda was beaten and kidnaped. (*Id.*) The statements made at trial differed substantially from the oral and written statements Ortiz gave to Valez and Rodriguez almost three years earlier at the time of his arrest. (*Id.*)

---

[2] Aguirre was convicted of Miranda's murder in 1999. (Compl. ¶ 34.)

Defendants Lopez and Bautista intimidated Omar Aguirre into giving oral and written statements implicating plaintiff in Miranda's murder. They knew Aguirre's statement was false. (*Id.* ¶ 14.) Aguirre signed a handwritten statement, prepared by an Assistant Cook County State's Attorney and translated to Aguirre in the presence of Bautista and Lopez, which implicated plaintiff in the murder and solicitation of murder of Miranda. (*Id.* ¶ 17.)

Duarte Santos executed a handwritten statement in the presence of Defendant Officers that implicated plaintiff in Miranda's murder. (*Id.* ¶ 18.) Defendant Officers also intimidated other witnesses, including Jose Chapa and Leticia Martinez, to give false statements or to refuse to testify to the truth. (*Id.* ¶ 21.) Valez and Rodriguez intimidated Chapa into giving a false handwritten statement alleging that he was with Miranda at plaintiff's tavern on the night of the murder. (*Id.* ¶ 12.)

After plaintiff was arrested, Defendant Officers prepared multiple reports that included these false statements and information. They signed the reports in an attempt to cover up the false arrest of plaintiff and others. (*Id.* ¶ 20.) Defendant Officers failed to investigate information given to them by alleged witnesses. They also failed to timely obtain telephone records and to verify information. (*Id.* ¶ 21.)

Defendants' reports were turned over to CCSAO prosecutors. The CCSAO used the false information and testimony to indict plaintiff on murder and solicitation of murder charges. (*Id.* ¶ 22.) Plaintiff was incarcerated for several days after his arrest. A Cook county judge, impressed by the false statements used by the CCSAO, increased plaintiff's bond from $500,000 to $1 million. (*Id.* ¶ 23.) Plaintiff was forced to hire an attorney to defend himself at a jury trial on the murder and solicitation of murder charges. (*Id.* ¶ 24.)

Plaintiff has been forced to pay thousands of dollars in interest on a loan for his bond and on monies borrowed to pay legal fees. (*Id.* ¶ 25.) Plaintiff lost ten percent of his bond money to the Clerk of the Circuit Court of Cook County. (*Id.*) Plaintiff's reputation within the community has suffered, and he has lost a substantial amount of business at his tavern due to the murder charge. (*Id.* ¶ 26.) He has also suffered extreme mental anguish throughout the three years between his arrest and the conclusion of his trial. (*Id.* ¶ 27.)

Defendant Officers knew that the statements of various individuals implicating plaintiff in the murder and solicitation for murder were false. (*Id.* ¶ 28.) For over five years, they conspired to cover up their intimidation of witnesses into making false statements as well as their inadequate and incompetent investigation. (*Id.*)

Plaintiff alleges that the racketeering enterprise is the CPD, in and through which Defendant Officers used their official positions to illegally attempt to obstruct justice, intimidate witnesses to commit perjury, cover up false arrests and prosecute plaintiff for murder. (*Id.* ¶ 29.) The CPD is an enterprise that affects interstate commerce. (*Id.* ¶ 30.) Defendants Valez, Rodriguez, Lopez and Bautista participated in the conduct of the CPD through a pattern of racketeering activity and conspired among themselves and others unnamed to do the same. (*Id.* ¶ 31.) Defendant Officers engaged in racketeering activity by violating several criminal laws, including: (1) influencing a grand jury in violation of 18 U.S.C. § 1503; (2) obstruction of a criminal investigation in violation of 18 U.S.C. § 1510; (3) obstruction of state or local law enforcement in violation of 18 U.S.C. § 1511; (4) extortion of witnesses to commit perjury to avoid prosecution or to induce false statements and testimony; (5) obstruction of justice in violation of 18 U.S.C. § 1503; and (6) tampering with a witness in violation of 18 U.S.C. § 1512. (*Id.* ¶ 32.)

Between July 1997 and December 2002, Defendant Officers engaged in the following acts as part of their continued criminal activity: (1) knowingly prepared three false confessions in November 1997 that implicated plaintiff in Miranda's murder and had Santos, Aguirre and Ortiz each sign one; (2) tendered these three false confessions to the CCSAO, which were then used in part to prosecute Santos, Aguirre, Ortiz, Robert Gayol and plaintiff on murder charges; (3) prepared and signed police reports between July and November 1997 that, with defendants' knowledge, contained false oral and written statements of Santos, Aguirre and Ortiz; (4) coerced Ortiz several weeks prior to plaintiff's August 2000 trial to change his oral and written statements so that Ortiz became a "witness" who heard plaintiff solicit Miranda's murder and who saw plaintiff participate in the beating and subsequent murder of Miranda; (5) coerced Ortiz to give false testimony against plaintiff in an attempt to convict him of murder; (6) coerced Ortiz in 2001 and 2002 to falsely testify that he saw Gayol burn Miranda alive in order to obtain a murder conviction for Gayol; (7) coerced the CCSAO to use Aguirre's false statement in two separate murder trials in 1998 and 1999 in order to convict Aguirre of Miranda's murder; (8) provided their police reports, which they knew contained false statements and false confessions, to federal agents and refused to advise the federal agents that the reports contained false information and false statements; and (9) refused to cooperate with federal prosecutors in subsequent prosecutions of the individuals who actually murdered Miranda in order to cover up their prior acts of perjury, intimidation and preparation of false reports and false statements. (*Id.* ¶ 33.)

Defendant Officers' acts caused Aguirre to be convicted of murder in 1999 and sentenced to 55 years in prison. (*Id.* ¶ 34.) Their acts caused Santos to plead guilty to a lesser offense in 2001 and receive a prison sentence of 12 years and caused Ortiz to plead guilty to murder in 2000 and

receive a prison sentence of 25 years. (*Id.* ¶¶ 35, 36.) The acts of Defendant Officers caused Gayol to be convicted of murder in 2002 and sentenced to life in prison. (*Id.* ¶ 37.) Their acts also caused plaintiff to be falsely arrested, charged with murder and solicitation of murder for hire, jailed and prosecuted. (*Id.* ¶ 38.)

Plaintiff sued Defendant Officers and others[3] for violations of RICO[4], 42 U.S.C. § 1983 and state law. In August 2003, we granted Defendant Officers' motion to dismiss, but gave plaintiff leave to amend his complaint with respect to the RICO claim. Plaintiff has done so, and Defendant Officers have filed this motion to dismiss.

### The Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### Discussion

Among other things, RICO prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct

---

[3] Plaintiff's original complaint named Defendant Officers, the City of Chicago, Miguel LaSalle and Luis Ortiz as defendants. The City of Chicago, LaSalle and Ortiz have been dismissed from the case without prejudice.

[4] RICO is codified at 18 U.S.C. § 1961 *et seq.*

-6-

or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To state a claim for a violation of §1962(c), plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Slaney v. International Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). Defendants contend that plaintiff has failed to allege a pattern of racketeering activity sufficient to maintain a substantive RICO claim.[5]

## RICO Pattern

The pattern requirement is one of the more complicated elements of a RICO claim. A civil RICO plaintiff must allege a "pattern of racketeering activity," which is, at a minimum, two predicate acts. 18 U.S.C. §§ 1961(5), 1962(c). The Supreme Court, however, also requires that a plaintiff satisfy the so-called "continuity plus relationship" test, which requires a showing that the predicate acts are related to each other and pose a threat of continued criminal activity. *H. J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992).

The relationship element is met if the predicate acts have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H. J. Inc.*, 492 U.S. at 240 (looking to language in the Dangerous Special Offender Sentencing Act, 18 U.S.C. § 3575, *et seq.* (partially

---

[5] In Defendant Officers' motion to dismiss plaintiff's original complaint, they argued that plaintiff did not have standing to bring a RICO claim and that he failed to adequately alleged the conduct, enterprise, pattern and interstate commerce elements of a RICO claim. We rejected all but one of their arguments; we agreed that plaintiff failed to adequately allege the pattern requirement. *See Gamboa v. City of Chicago, et al.*, No. 03C219, August 6, 2003 Memorandum Opinion and Order, at 5-12.

-7-

repealed), an act which formed part of the Organized Crime Control Act of 1970 with RICO) (internal quotations omitted). The continuity element is met if there is a series of related predicates extending "for such an extended period of time such that a threat of future harm is implicit," called closed-ended continuity, or if the predicates "by [their] nature project[] into the future with a threat of repetition," as when they "are part of an ongoing entity's regular way of doing business," called open-ended continuity. *Id.* at 241-42; *Midwest Grinding Co., Inc.*, 976 F.2d at 1023. Defendant Officers contend that plaintiff's new allegations do not satisfy the continuity prong of the pattern element under either a closed-ended or open-ended analysis.

We find that plaintiff has shown a threat of continued criminal activity under a closed-ended analysis.[6] As an aid in ascertaining whether a pattern exists in closed-ended cases, our court of appeals often looks to the following factors: the duration of time over which the predicate acts were committed, the number and variety of predicate acts, the number of victims, the presence of separate schemes and the occurrence of distinct injuries. *See Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986). None of the factors is determinative. *See Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 524 (7th Cir. 1995); *420 East Ohio Ltd P'ship v. Cocose,* , 980 F.2d 1122, 1124 (7th Cir. 1992) (*Morgan* factors are not rules, but rather provide "lens through which courts may focus on the existence of continuity plus relationship") (internal quotations and citation omitted).

The first factor, duration, weighs heavily in favor of plaintiff. *See Midwest Grinding Co. Inc.*, 976 F.2d at 1024 (calling duration factor "closest thing we have to a bright-line continuity test").

---

[6] We note that plaintiff has attempted to present additional facts for our consideration through his response memorandum. *See, e.g.*, Response at 5 (discussing new "injured" parties) and 7 (quoting plea agreement). Complaints cannot be amended by briefs filed in opposition to a motion to dismiss. *See Perkins v. Silverstein*, 939 F.2d 463, 470 n.6 (7th Cir. 1991). We do not consider these additional facts.

According to plaintiff, Defendant Officers spent three years manufacturing evidence, tampering with and intimidating witnesses and preparing false reports for the CCSAO. Although Defendant Officers' efforts to cover up their bungled investigation of Miranda's murder and their failure to cooperate with a subsequent federal investigation into the murder do not extend the duration of the scheme, *see Midwest Grinding Co. Inc.*, 976 F.2d at 1021, 1024 (efforts to cover up scheme do not extend duration of scheme); *Aldridge v. Lily-Tulip, Inc.*, 953 F.2d 587, 593-94 (11th Cir. 1992) (acts to conceal underlying wrongdoing do not carry threat of future harm), three years is a sufficient period of time to find a threat that the predicate acts will recur in the future. *Cf. 420 East Ohio Ltd P'ship*, 980 F.2d at 1125 (discussing duration necessary to meet continuity requirement and noting that six months may suffice but is not long enough to "automatically infer the requisite continuity").

As for the second factor, the predicate acts involved in this case, influencing a grand jury, obstructing a criminal investigation and tampering with witnesses, are varied enough to tip this factor in plaintiff's favor. The acts as described in the amended complaint were directed at plaintiff as well as at others. In addition, each of these acts occurred more than once as they were committed as part of a murder investigation that implicated at least five people. This is not a situation that the Seventh Circuit has dealt with so frequently where the "multiple predicate acts" consisted of several instances of mail and wire fraud. *See Uniroyal Goodrich Tire Co.*, 63 F.3d at 523 (discussing use of mail and wire fraud to make out RICO case).

The result with respect to the other factors is less clear. Defendant Officers say there is only one victim, one scheme and injuries that resulted from the single scheme. (Mot. to Dismiss at 5.) Plaintiff claims that Defendant Officers were not involved in just one scheme; rather, their activities aided in the prosecution of five different individuals and created as many victims. (Resp. at 4.)

While it may be that there is only one scheme – the investigation into Miranda's murder and finding the killers – plaintiff's new allegations suggest a scheme different in nature and scope from those the Seventh Circuit has found in the past do not pose a threat of repetition. *See, e.g., Olive Can Co. v. Martin*, 906 F.2d 1147, 1151 (7th Cir. 1990) (single scheme to pay back corporate insider's loan had natural ending point and no threat of continued criminal activity in part because scheme was short-lived). Here, the scheme had an objective, but it was loosely defined. It was not apparent from the outset how defendants would actually achieve their goal, how long it would take them to do so or who would suffer as a result. Implicating plaintiff in Miranda's murder was on the agenda, but defendants focused their activities on other "suspects" as well. We find the broad nature of the scheme significant. In any event, the existence of a single scheme is not an automatic bar to a finding of continuity. *See 420 East Ohio Ltd P'ship*, 980 F.2d at 1125.

Finally, plaintiff alleges a number of "victims," but only plaintiff is alleged to have suffered any economic injuries. *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 782 (7th Cir. 1994) (discussing *Morgan* injury factor in terms of economic injury). *But see Uniroyal Goodrich Tire Co.*, 63 F.3d at 523 (discussing injury to single victim in economic terms but also noting that existence of single victim does not preclude finding of pattern of racketeering activity). This factor tends to weigh in defendants' favor.

Given the eye to which we view a complaint on a motion to dismiss, we find that, on balance, the *Morgan* factors support a finding of closed-ended continuity.[7] *See Morgan*, 804 F.2d at 975-76

---

[7] Defendants argue that plaintiff has not pled fraud with the required particularity of Rule 9(b). We disagree. Plaintiff has alleged the "who, what, when, where, and how" of the activities that sound in fraud. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). He has provided more than conclusory allegations; he has provided defendants with sufficient information to identify the fraud. (Compl. ¶¶ 10-22, 33.) *See Lachmund v. ADI Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999) (purpose of Rule 9(b) is to give party accused of fraud adequate notice of specific activity that plaintiff alleges constituted fraud).

(pattern of racketeering activity depends on facts and circumstances of a particular case with no one factor being determinative). Because we find plaintiff has satisfied the "continuity plus relationship" test of the pattern requirement under a closed-ended analysis, we need not consider whether he can establish open-ended continuity.

### RICO Conspiracy

Section 1962(d) of 18 U.S.C. prohibits conspiracy to violate RICO. To allege a conspiracy to violate § 1962(c), plaintiff must allege that (1) "each defendant agreed to . . . participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998).

Plaintiff has satisfied the two requirements set forth in *Goren*. First, he alleges that "Valez, Rodriguez, Bautista and Lopez participated in the conduct of the CPD through a pattern of racketeering activity, and conspired amongst themselves . . . to do the same." (Compl. ¶ 31.) In addition, plaintiff alleges facts which support each defendant's agreement to participate in the affairs of the enterprise and to violate § 1962(c). *Schiffles v. Kemper Fin. Servs., Inc.*, 978 F.2d 344, 352 (7th Cir. 1992) (conclusory allegations of conspiracy not sufficient, plaintiff must also allege relevant facts). Defendants were all assigned to the Miranda murder investigation. They conducted their investigation in their capacity as CPD detectives. They often acted together when intimidating a witness, procuring a false statement or preparing a false report. The predicate acts were inter-related, and it is clear from the complaint that each defendant played a significant role in carrying out the conspiracy and committing the predicate acts. One can infer from these facts that Defendant Officers

each agreed to participate in the affairs of the CPD through a pattern of racketeering activity and to violate § 1962(c) by the commission of at least two predicate acts. *See Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 964-68 (7th Cir. 2000) (discussing conspiracy under RICO and that it can be analyzed as two agreements: an agreement to participate in the affairs of an enterprise and an agreement to the commission of at least two predicate acts).

## Conclusion

For the reasons stated above, defendants' motion to dismiss is denied.

**ENTER:**

_____
UNITED STATES DISTRICT JUDGE
PAUL E. PLUNKETT

DATED: JUN 2 9 2004